UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ X

KELVIN FRAZIER and ARIEL ALVAREZ, on behalf of : 
themselves and all others similarly situated, and KENNETH :   Case No. 24 Civ. 7364
HOYTE, individually, :
     :   CLASS AND COLLECTIVE
                         Plaintiffs, :   ACTION COMPLAINT
      - against - :
     :
LOOKS GREAT SERVICES, INC., :
     :
                         Defendant. :

------------------------------------------------------------------------ X

Plaintiffs Kelvin Frazier and Ariel Alvarez, on behalf of themselves and all others similarly

situated, and Kenneth Hoyte, individually, by and through their attorneys Kessler Matura P.C.,

complaining of Defendant Looks Great Services, Inc. ("Defendant" or "LGS"), allege as follows:

## INTRODUCTION

1.      LGS is a commercial tree contractor that handles disaster cleanup, tree removal,

and pruning for private entities, municipalities, and state agencies. Most LGS revenue comes from

its contracts with government entities ("Public Work Contracts"), which require the company to

pay its employees in accordance with New York State prevailing wage schedules. LGS has over

20 years of experience, including numerous multi-million-dollar Public Work Contracts.

2.      Plaintiffs are former LGS employees ("Crew Members"), who removed storm

debris and other brush and cut down, pruned, chipped, and ground trees. Crew Members operate

heavy machinery, including knuckle boom trucks with rotating grapple attachments, large brush

and stump grinders, skid loaders, mulching machines, chipper dump trucks, dump body trucks,

and bucket trucks.

3.      For Public Work Contracts, Crew Members' work generally falls under two New

York prevailing wage schedules: the Operating Engineer – Heavy and Highway Schedule for Crew

Members operating heavy machinery under the applicable Public Work Contracts, with rates differing based on machinery type; and the Electrician – Tree Trimmer Schedule for Crew Members working under a Groundman or Tree Trimmer/Remover and Lince Clearance Specialist ("Tree Trimmer") classification. A Groundman is an off-machine worker, cleaning debris and feeding downed brush through woodchippers. The Groundman rate is the lowest on these two schedules, followed by the rate for Tree Trimmers. The rates under the Operating Engineer Schedule significantly exceed both Electrician – Tree Trimmer rates. For example, a Crew Member working as a Groundman after July 1, 2024, is entitled to $25.67 an hour.[1] A Crew Member operating a stump grinder or a handfed mulching machine is entitled to $54.56 an hour, while working a skid loader/steer required $76.72 an hour.[2] Operating a knuckle boom grapple truck commands a rate of $81.94.[3]

4.      New York State law mandates that the operative prevailing wage schedules be attached to all Public Work Contracts and posted at public work sites. *See* N.Y. Lab. Law § 220. The Electrician – Tree Trimmer Schedule further sets forth that only 20% of a given job's workforce can be allocated to the Groundman classification.

5.      Nevertheless, LGS systematically circumvented prevailing wage laws. LGS required each Crew Member to clock in on their time-tracking application as a Groundman, even for those Crew Members operating heavy machinery. LGS paid Crew Members almost

---

[1]      *See* N.Y.S. Dept. of Lab., Prev'g Wage Rates for 07/01/2024 – 08/30/2025 (Oct. 21, 2014), https://apps.labor.ny.gov/wpp/publicViewPWChanges.do?method=showIt# (select "Suffolk" from dropdown; then click "View")

[2]      *Id*. at 32.

[3]      *Id.*

exclusively at the lesser Groundman rate, except occasionally paying the most senior member on a crew at an Operating Engineer rate or a Tree Trimmer rate.

6.     After numerous Crew Member complaints and a June 2022 meeting where Crew Members voiced objection, LGS continued to require Crew Members to clock in under the Groundman classification, but to also note any machinery used in the time-tracking application.

7.     While precisely tracking employee time, LGS declined to track Crew Members' hours in the higher-paying roles.  Instead, LGS paid one hour of Operating Engineer pay - for some Crew Members, one hour per day, and some, one per week – to some of those Crew Members who operated heavy machinery.  For others, they were still paid only at the Groundman rate.  Crew Members invariably surpassed the number of hours paid at a higher-paying rate.

8.     In addition, LGS failed to calculate Plaintiffs' and Crew Members' overtime rates at one and one-half times their actual regular rate.  Instead of dividing all of the wages earned over the week by the hours worked to determine Plaintiffs' and Crew Members' regular rate – for purposes of calculating the proper overtime rates – LGS arbitrarily designated the regular rate to be a lesser hourly rate.  This lesser hourly rate was typically the rate used for drive time and work on private jobs.  Moreover, the improperly deflated prevailing wage rate, as described above, further depressed Plaintiffs' and Crew Members' overtime rates.

9.     Plaintiffs bring this lawsuit to recover unpaid prevailing wages, overtime wages, and other damages on behalf of all LGS' Crew Members, based on Defendant's violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., the New York Labor Law ("NYLL"), Articles 6, 8, and 19, and appropriate rules and regulations.  Plaintiffs further seek damages for Crew Members for Defendant's breaches of contracts.

10.     Plaintiffs Frazier and Alvarez ("Class Representatives") bring the First Cause of Action on behalf of themselves and the following "Collective" pursuant to 29 U.S.C. § 216(b):

> All individuals who worked for Defendant as a Crew Member in New York State at any time during the three years and 150 days preceding the filing of this Complaint.

11.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring the Second, Third, Fourth, and Fifth Causes of Action on behalf of themselves and all similarly situated "Class Members," defined as follows:

> All individuals who worked for Defendant as a Crew Member in New York State at any time during the six years and 150 days preceding the filing of this Complaint (the "Class").

## JURISDICTION & VENUE

12.     Jurisdiction of the Court over this controversy is based upon 28 U.S.C. §§ 1331 and 29 U.S.C. § 216(b).

13.     This action properly lies in the Eastern District of New York, pursuant to 28 U.S.C. § 1391(b)(2), because the events giving rise to this action occurred in Suffolk and Nassau Counties.

14.     This Court has jurisdiction over all state law claims brought in this action pursuant to 28 U.S.C. § 1367(a).

## TOLLING

15.     By agreement, the Parties tolled the statute of limitations for the claims in this Complaint from March 1, 2024, through April 1, 2024.

16.     The statute of limitations for the claims asserted in this Complaint were further tolled from May 22, 2024, through July 23, 2024, when Plaintiffs filed the complaint in *Frazier, et al. v. Looks Great Services, Inc.*, No. 24 Civ. 3701 (E.D.N.Y.).

17.     The Parties again, by agreement, tolled the statute of limitations for the claims in this Complaint from July 23, 2024, through September 18, 2024.

18.     In total, the claims were tolled by 150 days.

## THE PARTIES

### *Plaintiff Kelvin Frazier*

19.     Plaintiff Frazier is an individual who resides in Suffolk County, New York.

20.     Frazier is a covered "employee" as defined by 29 U.S.C. § 203(e)(1) and NYLL §§ 190(2), 651(5).

21.     Frazier is a "laborer, workman, or mechanic" within the meaning of NYLL § 220.

22.     Frazier was employed by Defendant over three separate periods of time: for approximately six months in 2013; from in or around August 2019 to May 2021; and from in or around November 2022 through December 2023.

23.     Throughout his employment, Frazier operated heavy machinery, including a grapple truck and stump grinder, while working on Public Work Contracts.  However, Frazier did not receive the proper prevailing wage rate for all hours worked.  Instead, Frazier routinely received pay as a Groundman under the Electrician – Tree Trimmer Schedule when he was entitled to be paid at higher rate classifications.

24.     Frazier regularly worked over 40 hours a week when also working on Public Work Contracts but was not paid an overtime premium inclusive of all his earnings.  Instead, LGS paid him at an overtime rate that was less than 1.5 times his actual regular rate of pay.

25.     During Frazier's 2013 stint with LGS, he exclusively operated a stump grinder.

26.     Frazier also operated a stump grinder from around August 2019 through January 2020.  Operating a stump grinder entitled Frazier to be paid at a rate higher than Groundman.

Nevertheless, LGS continuously paid him at a Groundman rate under the Electrician – Tree Trimmer Schedule.

27.     In February 2020, Frazier obtained a class B commercial driver's license ("CDL"), which allowed him to operate a knuckle boom grapple truck.  As a grapple truck operator, Frazier was entitled to receive a rate higher than the Groundman rate that LGS primarily paid him.

28.     At the time he obtained the CDL, Frazier told Marcus Pitts ("Pitts"), LGS' manager in charge of daily operations in Long Island, that he was entitled to a higher pay rate.  In response, Pitts denied that the wage rate was different for a grapple truck operators and continued to pay Frazier at the Groundman rate.

29.     For example, during the week between April 20 and April 26, 2020, Frazier worked 44.25 hours on prevailing wage jobs.  Although Frazier operated a grapple truck and stump grinder during that week, LGS paid him for 34.78 hours as a Groundman at a rate of only $21.45 an hour. In addition, LGS did not pay Frazier at one and one-half times his regular rate for the 4.25 hours of overtime, instead paying him at $22.50 per overtime hour.

30.     In between Frazier's second and third employment periods with LGS, he complained to Pitts regarding the pay discrepancies.  Pitts admitted that LGS paid Frazier improperly but would only agree to reimburse Frazier for approximately one hour per day worked at the Operating Engineer rate, instead of the entirety of the time owed.

31.     Upon Frazier's return to LGS in November 2022, Pitts promised Frazier that he would receive an increased rate.  However, LGS continued the illegal pay practices.  Frazier again rotated between the grapple truck and stump grinder.  Per Pitts's instruction, Frazier clocked in each day on LGS' time-keeping system as a Groundman and notated the machine he operated each

day.  LGS paid Frazier as a Groundman, except on some weeks he received one hour's daily pay at an Operating Engineer rate.

32.     As a result, Frazier's paystubs reflected hourly work down to the 100th of an hour, but the higher-paying Operating Engineer work is rounded to the hour.

33.     For example, during the week ending February 19, 2023, Frazier worked 43.43 total hours on a Public Work Contract.  Frazier was paid as follows:

| Earnings and Hours | Hours | Rate | Current |
|---|---|---|---|
| LGS hourly | 6.03 | 25.00 | 150.75 |
| LGS overtime (x1.5) hourly | 3.43 | 37.50 | 128.63 |
| Prevailing Wage GM - ST | 28.97 | 22.64 | 655.88 |
| Operating Engineer class A | 5.00 | 76.52 | 382.60 |
| Nassau County Benefit GM - S | 28.97 | 18.64 | 540.00 |
| Operating Engineer Fringe | 5.00 | 39.80 | 199.00 |

Frazier received one hour of pay at an Operating Engineer rate for each day worked.  Frazier should have received a higher-paying rate for the entirety of the prevailing wage hours worked.

34.     For the 3.43 overtime hours, LGS failed to pay Frazier at one and one-half times his regular rate, inclusive of all earned wages.

*Plaintiff Ariel Alvarez*

35.     Plaintiff Alvarez is an individual who resides in Suffolk County, New York.

36.     Alvarez is a covered "employee" as defined by 29 U.S.C. § 203(e)(1) and NYLL §§ 190(2), 651(5).

37.     Alvarez is a "laborer, workman, or mechanic" within the meaning of NYLL § 220.

38.     Alvarez was employed by Defendant over two periods of time: from about November 2019 to May 2021 and from January 2022 through March 2023.

39.     Throughout his employment, Alvarez operated heavy machinery including a skid steer, woodchipper, grapple truck, and stump grinder, while working on public jobs.  However, Alvarez did not receive the proper prevailing wage rate for all hours worked.  Alvarez routinely

received pay as a Groundman under the Electrician – Tree Trimmer Schedule when he was entitled to be paid at higher paying classifications.

40.     Additionally, Alvarez regularly worked over 40 hours a week when also working on Public Work Contracts but was not paid an overtime premium inclusive of all his earnings. Instead, LGS paid him at an overtime rate that did not correspond with and was less than 1.5 times his actual regular rate of pay.

41.     During Alvarez's first stint with LGS, he operated a stump grinder, skid steer, and woodchipper, all of which entitled him to higher pay than the Groundman rate.  However, LGS solely paid Alvarez at the Groundman rate.

42.     For example, during the week of March 1 to March 7, 2021, Alvarez worked on a public job for a total of 35.05 hours.  Despite operating heavy machinery, LGS solely paid Alvarez at the Groundman rate of $21.45.  LGS should have paid Alvarez at a higher pay classification.

43.     During Alvarez's second employment period with LGS, he operated a grapple truck, woodchipper, stump grinder, and occasionally trimmed trees from a bucket truck.

44.     Until June 2022, LGS continuously paid Alvarez at the Groundman rate, no matter the equipment.

45.     For example, during the week ending March 20, 2022, Alvarez worked 43.75 total hours on a public job, which was paid as follows:

| Earnings and Hours | Hours | Rate | Current | |
|---|---|---|---|---|
| LGS hourly | 7.50 | 18.00 | 135.00 | |
| Prevailing Wage GM - ST | 32.50 | 22.09 | 717.93 | |
| LGS overtime (x1.5) hourly | 3.75 | 27.00 | 101.25 | |
| Nassau County Benefit GM - S | 32.50 | 16.10 | 523.25 | |
| Drive Time - ST | | | 0.00 | |
| | 43.75 | | 1,477.43 | |

LGS paid Alvarez at the prevailing wage for a Groundman for 32.5 hours. However, Alvarez operated heavy machinery during the entirety of his work time, entitling him to receive a prevailing wage at a higher pay classification.

46. In addition, LGS improperly paid Alvarez overtime at 1.5 times the "LGS hourly," instead of paying 1.5 times a regular rate that divided all wages by hours worked.

47. Alvarez complained to Pitts on several occasions about LGS' improper pay policies.

48. For example, in or around November 2021, Alvarez texted Pitts about only being paid at the lower Groundman rate. Pitts responded with a string of incoherent excuses, seemingly to either confuse or impress Alvarez, so as to avoid paying Alvarez at a higher rate.

49. In or around June 2022, Alvarez participated in a morning meeting during which Crew Members confronted Pitts regarding LGS' failure to pay at proper rate classifications and overtime premiums. During the meeting, Pitts claimed that he solely provided Operating Engineer pay to the most senior member on a work crew.

50. Following the June 2022 meeting, Pitts instructed Alvarez and other Crew Members to clock in under Groundman and include their assigned heavy machine in a "Notes" section in the time-keeping application.

51. Despite noting heavy machinery assigned each day, LGS continued to pay Alvarez at the Groundman rate for almost all hours worked. LGS paid Alvarez at an Operating Engineer rate for one hour per week.

52. As a result, Alvarez's paystubs reflected hourly work down to the 100th of an hour, but the higher-paying prevailing wage work is rounded to the hour.

53.     For example, for the week of September 19 to September 25, 2022, Alvarez worked a total of 45.6 hours.  LGS paid Alvarez as follows:

| Earnings and Hours | Hours | Rate | Current |
|---|---|---|---|
| LGS hourly | 7.48 | 20.00 | 149.60 |
| LGS overtime (x1.5) hourly | 5.60 | 30.00 | 168.00 |
| Prevailing Wage GM - ST | 31.52 | 22.64 | 713.61 |
| Operating Engineer class A | 1.00 | 76.52 | 76.52 |
| PW Fringe GM  - ST | 31.52 | 18.64 | 587.53 |
| PW - OP Fringe | 1.00 | 39.80 | 39.80 |

54.      Despite operating a grapple truck for hours on a public job, LGS only paid Alvarez for one hour at a rate above the Groundman rate.

55.     Additionally, LGS did not pay Alvarez at 1.5 times his regular rate for the 5.6 overtime hours.

56.     In late June 2022, after LGS began paying Crew Members for one hour at the Operating Engineer rate, Alvarez again complained to Pitts.  Alvarez questioned LGS' new practice and complained about driving and operating the grapple truck all day, but only getting paid for one hour of prevailing wage at the appropriate rate.

57.     LGS continued its pay practices despite Alvarez's complaint.

***Plaintiff Kenneth Hoyte***

58.     Plaintiff Hoyte is an individual who resides in Nassau County, New York.

59.     Hoyte is a covered "employee" as defined by 29 U.S.C. § 203(e)(1) and NYLL §§ 190(2), 651(5).

60.     Hoyte is a "laborer, workman, or mechanic" within the meaning of NYLL § 220.

61.     Hoyte was employed by Defendant from August 2022 to September 2023.

62.     Throughout his employment, Hoyte operated a stump grinder while working on Public Work Contracts.  However, Hoyte did not receive the proper prevailing wage rate for all

hours worked. Hoyte routinely received pay as a Groundman under the Electrician – Tree Trimmer Schedule when he was entitled to be paid at higher paying classifications.

63.     Hoyte regularly worked over 40 hours a week when also working on Public Work Contracts but was not paid an overtime premium inclusive of all his earnings. Instead, LGS paid him at an overtime rate that was less than 1.5 times his actual regular rate of pay.

64.     Pitts instructed Hoyte to clock in as a Groundman on LGS' time-keeping system and to note the machine he was operating each day.

65.     LGS then paid Hoyte as a Groundman except for one hour of weekly pay at the Operating Engineer rate.

66.     As a result, Hoyte's paystubs reflected hourly work down to the 100th of an hour, but the higher-paying Operating Engineer work is rounded to the hour.

67.     For example, during the week ending April 23, 2023, Hoyte worked 42.27 total hours on a Public Work Contract, which was paid as follows:

| Earnings and Hours | Hours | Rate | Current |
|---|---|---|---|
| LGS hourly | 9.17 | 18.00 | 165.06 |
| LGS overtime (x1.5) hourly | 2.27 | 27.00 | 61.29 |
| PW GM - ST | 29.83 | 22.64 | 675.35 |
| Operating Engineer Class E | 1.00 | 50.68 | 50.68 |
| PW Fringe GM - ST | 29.83 | 18.64 | 556.03 |
| PW - OP Fringe | 1.00 | 39.80 | 39.80 |
| LGS Holiday | | | 0.00 |
| LGS Personal/Sick | | | 0.00 |
| | 42.27 | | 1,548.21 |

68.     LGS paid Hoyte at the prevailing wage for a Groundman for 29.83 hours and as an Operating Engineer for one hour. However, because Hoyte operated a stump grinder for the entirety of his time, he should have received a higher-paying rate for all hours.

69.     Additionally, LGS failed to pay Hoyte at 1.5 times his regular rate for the 2.27 overtime hours he worked that week.

*Defendant Looks Great Services, Inc.*

70.     Looks Great Services, Inc. is a foreign corporation incorporated under the laws of Delaware.

71.     LGS was and still is an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d), and N.Y. Lab. Law § 190(3).

72.     At all relevant times, the activities of LGS constituted an "enterprise" within the meaning of Section 3(r) & (s) of the FLSA, 29 U.S.C. § 203(r) & (s).

73.     At all relevant times, LGS employed employees, including Plaintiffs and Crew Members, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of Section 3(b), (g), (i) and (j) of the FLSA, 29 U.S.C. § 203(b), (g), (i), (j), (r) & (s).

74.     LGS' annual gross volume of business is not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii).

75.     LGS' principal place of business is located at 200 E. 2nd Street, Suite 28, Huntington Station, New York, 11743.

76.     LGS is a commercial tree and debris removal contractor that specializes in municipal and town contracts.

77.     LGS estimates that the majority of its business is public work.[4]

78.     LGS has or previously entered into Public Work Contracts with: (a) Nassau County; (b) the Town of Huntington; (c) Department of Environmental; (d) Nassau County Department of

---

[4]     *See* Sec. Am. Pet. Ex. E (NYSCEF Doc. No. 70) at 8, *Looks Great Services, Inc. v. Town of Huntington, N.Y.*, No. 0608411/2022 (Sup. Ct. Oct. 14, 2022) ("LGS Pet. Ex. E").

Public Works; (e) Garden City; (f) City of Freeport; (g) City of Long Beach; (h) New York State Department of Transportation; and (i) Village of Brookville.

79.    Kristian Agoglia ("Agoglia") incorporated LGS in 1999.[5]

80.    Agoglia is LGS' president.[6]

81.    Agoglia is LGS' sole shareholder.[7]

82.    As part of LGS' corporate structure, Agoglia has managers under him.[8]

83.    Throughout the relevant period, Marcus Pitts held several titles, including Vice President and Regional Business Development Manager.[9]

84.    Pitts was responsible for LGS' day-to-day operations in the Long Island region.

85.    Pitts hired and fired Crew Members.

86.    Pitts set Crew Members schedules and job assignments.

87.    Pitts ran morning meetings with Crew Members before Crew Members went to job sites.

88.    Pitts determined the pay rate received by each employee.

89.    Crew Members directed work-related complaints, including any complaints related to payroll, to Pitts.

---

[5]    *See* Agoglia Dep. Tr. (NYSCEF No. 73) 22:10-20, *Potvin v. Jewell Trans., Inc.*, Index No. 062436/2014 (Sup. Ct. Mar. 25, 2019) ("Agoglia Dep.").

[6]    *See* Agoglia Dep. 22:24-23:5; LGS Pet. Ex. E at 10.

[7]    *See* Agoglia Dep. 23:6-11.

[8]    *See* Agoglia Dep. 47:2-21.

[9]    *See, e.g.*, LGS Pet. Ex. E at 7, 10.

90.     LGS bids on and has completed large-scale debris removal contracts.  For example, LGS held a $5,000,000 contract with the Town of Huntington, completed in October 2021.  LGS completed two debris removal contracts subsequent to Superstorm Sandy for $17,000,000 and $60,398,300, respectively.[10]

91.     LGS first applied for a bid to provide Nassau County with tree services in or around 2009.[11]

92.     LGS had a five-year contract with Nassau County for hazard cleanup from 2011.[12]

93.     LGS was awarded a contract by the Town of Huntington for debris removal and cleanup arising from storms in 2019 and 2020.  New York State prevailing wage rates applied to and were attached as part of the contract.[13]

94.     Agoglia puts in bids to governmental solicitations that note LSG's hourly pricing for various services, including the use of various types of trucks and machines.[14]

95.     LGS owns or leases various types of vehicles and heavy machinery, including cars, pickup trucks, chipper dump trucks, dump body trucks, bucket trucks, and grapple trucks.

96.     In a bid for storm debris removal for the Town of Huntington, to be completed between 2021 and 2022, LGS bid to provide the following equipment with operators: knuckle boom truck with rotating grapple attachment, suitable for loading dump trucks and trailers; self-

---

[10]    *See* Proposal for Supplies & Servs. (NYSCEF Doc. No. 3), *Looks Great Services, Inc.* No. 0608411/2022.

[11]    *See* Agoglia Dep. 38:5-7.

[12]    *See* Debris Mgmt. Agr. (NYSCEF No. 27), *Sierra v. Jewell Trans., Inc.* Index No. 015735/2015 (Sup. Ct. Sept. 22, 2022).

[13]    *See id.*

[14]    *See* Agoglia Dep. 41:11-42:7, 42:14-43:4.

loading knuckle boom truck with rotating grapple attachment with 50-plus cubic yard capacity, pup trailer with 40-plus cubic yard capacity; brush grinder with throughout capacity in excess of 125 tons/hour; excavator/material handler with rotating grapple attachment suitable to feed the brush grinder; wheel loader with four-way bucket with spec. weight in excess of 15,000 lbs.; wheel loader with spec. weight in excess of 50,000 lbs., and bucket capacity in excess of five cubic yards; 50-foot bucket truck with additional bucket operator/climber and two twenty-five inches or greater bar length chain saws; 10-wheel truck with dump with body in excess of 16 cubic yards, and swing/demolition gate; tractor/trailer truck with dump body in excess of 30 cubic yards and swing/demolition gate; tractor/trailer truck with dump body in excess of 60 cubic yards and swing/demolition gate.[15]

97.    For each piece of machinery, LGS included a specific price that included an operator to be paid at the corresponding prevailing wage rate.[16]

98.    In 2019, LGS' tools and vehicle inventory included, among other things, the following:  Case W14C Wheel Loader (1990); Hurricane Chipper 2/213 HP CAT Engine (2006); Hurricane 18 Chipper w/213 HP (2007); Loader 65 HD Giant Leaf Vac Loader 65 HD; Chipper - Morbark 18 Chipper; Rayco RG 100 99 HP; Skid Steer Bobcat Skid Steer - 2008 Bobcat MT55; and Hurricane 2400 Chipper Mobark 2400.[17]

---

[15]    *See* Proposal for Supplies & Servs. (NYSCEF Doc. No. 3), *Looks Great Services, Inc.*, No. 0608411/2022.

[16] *See id.*

[17]    *See* LGS Pet. Ex. E at 11-12.

## FLSA COLLECTIVE ACTION CLAIMS

99.     The Class Representatives bring the First Cause of Action, pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of themselves and all similarly situated persons.

100.     The FLSA Collective is defined in paragraph 10 above.

101.     Upon information and belief, there are more than 40 current and former Crew Members that are similarly situated to Plaintiffs who were denied proper overtime compensation.

102.     LGS regularly deploys Crew Members in three separate crews on a given workday. Two of the crews consist of five to seven Crew Members.  LGS also sends out a third crew to grind stumps, which consists of two to three Crew Members.

103.     The Class Representatives represent other Crew Members and are acting on behalf of Crew Members' interests as well as their own interests in bringing this action.

104.     Defendant unlawfully required Plaintiffs and all individuals employed as Crew Members to work in excess of 40 hours per week without paying them overtime compensation at a rate of at least 1.5 times their regular hourly rate.

105.     Crew Members frequently worked more than 40 hours in a workweek on Public Work Contracts, in turn requiring that they receive 1.5 times a regular rate that was in inclusive of all prevailing wages earned.  Nevertheless, LGS paid them at a lower rate.

106.     Additionally, Defendant failed to pay Crew Members at the proper wage rate for all hours worked, by willfully misclassifying Crew Members' work under the prevailing wage schedules and paying overtime at less than one and one-half times their regular rate.

107.     Defendant was aware or should have been aware that the law required it to pay non-exempt employees, including Plaintiffs and the FLSA Collective, an overtime premium of one and

one-half times their regular rate of pay – inclusive of all wages earned and entitled to – for all workhours in excess of 40 per workweek.

108.    Defendant applied the same unlawful policies and practices to their Crew Members throughout the State of New York.

109.    The FLSA Collective is readily identifiable and locatable using Defendant's records.  The FLSA Collective should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b).  Unless the Court promptly issues such a notice, the FLSA Collective, who have been unlawfully deprived of overtime pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendant.

## FEDERAL RULE OF CIVIL PROCEDURE RULE 23
## NEW YORK CLASS ALLEGATIONS

110.    The Class Representatives bring the Second, Third, Fourth, and Fifth Causes of Action under the NYLL and under Fed. R. Civ. P. 23(a) and (b), on behalf of themselves and all similarly situated employees who worked for Defendant as Crew Members during the period between six years prior to the filing of this Complaint and the date of final judgment in this matter.

111.    The Class is defined in Paragraph 11 above.

112.    Excluded from the Class are Defendant, its legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendant; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Class.

113. All of the work that Plaintiffs and Class Members have performed has been assigned by Defendant or Defendant has been aware of all of the work that Plaintiffs and Class Members have performed.

114. The persons in the Class are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, facts on which the calculation of that number can be based are presently within the sole control of Defendant.

115. Upon information and belief, the size of the Class is at least 40 individuals.

116. The Second, Third, Fourth, and Fifth Causes of Action are properly maintainable as a class action under Fed. R. Civ. Pro. 23(b)(3). There are questions of law and fact common to the Class that predominate over any questions solely affecting individual members of the Class, including but not limited to:

   a. whether Defendant failed to pay proper compensation to the Class Representatives and the Class for all work hours in excess of 40 per workweek in violation of and within the meaning of the NYLL § 650, *et seq.*, and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142;

   b. whether Defendant failed to pay proper compensation to the Class Representatives and the Class for all non-overtime work hours in violation of NYLL § 220, *et seq.*, and corresponding New York State Prevailing Wage Schedules, and in breach of the Public Work Contracts;

   c. whether Defendant failed to keep proper records and provide proper wage statements to Plaintiffs and the Class, in violation of NYLL § 195;

   d. the nature and extent of Class-wide injury and the appropriate measure of damages sustained by the Class Representatives and the Class;

   e. whether Defendant acted willfully or with reckless disregard in their failure to pay the Class Representatives and the Class; and

   f. the nature and extent of Class-wide injury and the measure of damages for those injuries.

117.     Defendant is aware or should have been aware that the NYLL requires them to pay employees working on Public Work Contracts a proper prevailing wage and to pay an overtime premium to employees performing non-exempt duties for all hours worked in excess of 40 per workweek.

118.     The Class Representatives fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class.  The named Plaintiffs are represented by attorneys who are experienced and competent in both class litigation and employment litigation.

119.     Further, the Class Representatives and the Class have been equally affected by Defendant's failure to pay proper wages.  Moreover, members of the Class still employed by Defendant may be reluctant to raise individual claims for fear of retaliation.

120.     Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

121.     Plaintiffs' claims are typical of those of the Class.  Plaintiff and the other Class Members were subjected to Defendant's policies, practices, programs, procedures, protocols and plans alleged herein concerning the failure to pay proper wages and the failure to keep adequate records.  Plaintiffs' job duties are typical of those of the Class Members.

122.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.  The members of the Class have been damaged and are entitled to recovery as a result of Defendant's common and uniform policies, practices, and procedures.  Although the relative damages suffered by individual members of the Class are not

*de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation. In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendant's practices.

**CLASS-WIDE FACTUAL ALLEGATIONS**

*LSG Failed to Pay the Proper Prevailing Wages*

123.     Plaintiffs and Class Members are current and former Crew Members employed by Defendant. Defendant routinely deployed Crew Members to work on Public Work Contracts, entitling them to be paid in accordance with New York prevailing wage schedules.

124.     Upon information and belief, prevailing wage schedules were annexed to and made a part of each Public Work Contract.

125.     Upon information and belief and pursuant to NYLL § 220, each of the Public Work Contracts to be performed in New York contained provisions specifying that the wages paid to all workmen shall not be less than the "prevailing rate of wages."

126.     NYLL § 220 provides that the wages to be paid to laborers, workingmen, and mechanics upon public work shall not be less than the prevailing rate of wages.

127.     The prevailing wage rates and supplemental benefits are the product of collective bargaining agreements between *bona fide* labor organizations and employers of the private sector. *See* N.Y. Lab. Law § 220.

128.     The promise to pay and ensure payment of prevailing wages and supplemental benefits in the Public Work Contracts was made for the benefit of all workers on the sites of the public projects. Thus, the workers furnishing labor on Public Work Contract projects are the beneficiaries of that promise.

129.    Plaintiffs and Class Members worked on a variety of Public Work Contracts that required the use of heavy machinery, including grapple trucks, bucket trucks, mulching machines, and stump grinders.   Plaintiffs and Class Members spent hours every day actively working on heavy machinery.   When not actively operating such machinery, Plaintiffs and Class Members were responsible for the machinery and would have to return to operation when needed.

130.    Jobs involving the use of heavy machinery on Public Work Contracts fall under classifications other than Groundman.

131.     Employees that are not using heavy machinery but are instead moving brush by hand and directing traffic are classified as a Groundman under the Electrician – Tree Trimmer Prevailing Wage Schedule.

132.    Rates for operating heavy machinery vary, but all are significantly higher than the Groundman rate.

133.     The prevailing wage schedules limit the use of the Groundman classification to 20% of a workforce on a project.   In other words, on a five-person crew, only one worker should receive Groundman pay.

134.    However, Defendant failed to pay all wages due to Plaintiffs and Class Members by misclassifying their work as Groundman under the prevailing wage schedules.

135.    Prior to June 2022, Defendant required Crew Members to clock in on their time-keeping application under the Groundman classification, even when they were operating heavy machinery.   Defendants solely paid Plaintiffs and Class Members as Groundman, despite the requirement to pay them at higher rates.

136.    Starting in June 2022, Defendants continued to require Crew Members to clock in under Groundman but permitted Crew Members to note their heavy machinery assignment for the

day in the time-keeping application. Defendant then paid Plaintiffs and Class Members for approximately one hour a day, and at times at one hour per week, at Operating Engineer rates, while paying the remainder at the Groundman rate.

137. As a result, Plaintiffs' and other Class Members' paystubs from June 2022 onward reflected hourly work down to the 100th of an hour, but the higher-paying Operating Engineer work was rounded to the hour.

### *LSG Failed to Pay Overtime at the Proper Rate*

138. When Crew Members worked on Public Work Contracts, Defendant did not pay them at 1.5 times their regular rate for hours in excess of 40 per workweek.

139. Through Defendant's time keeping application, Defendant kept track of overtime hours.

140. However, Defendant exclusively paid Plaintiffs and Class Members overtime using a regular rate applicable to private jobs and drive time, even in workweeks where Plaintiffs and Class Members worked on Public Work Contracts. The private job rate was invariably lower than the actual regular rate.

141. Defendants further failed to pay Plaintiffs and Class Members all their overtime wages due by underpaying them for their regular hours worked, as described above, thereby further suppressing their regular rate and resulting overtime rate.

### *LGS Failed to Provide Proper Wage Statements*

142. Plaintiffs and the Class's wage statements were consistently inaccurate, in violation of NYLL § 195.

143. Instead of properly reporting all hours that Crew Members worked in Operating Engineer roles, the wage statements either excluded or undercounted those hours.

144.    This practice aided Defendant in continuing to violate Plaintiffs' and Class Members' wage-payment rights under the FLSA and NYLL.

145.    As described above, prior to June 2022, LGS solely recorded Crew Member hours at Groundman rates.  Thereafter, LGS continued to under-record and under-report the hours worked by Crew Members, Plaintiffs included, operating heavy machinery.

146.    By solely reflecting the Groundman hours and rates, LGS deprived the Class of the information needed to correct their under-paid wages and otherwise determine the extent of these underpayments with precision.

147.    The ability of Plaintiffs and the Class to challenge the wage-payment policies of Defendant at the time of the violations was hindered by Defendant's failure to properly record Operating Engineer hours and rates.

148.    When Plaintiffs, for instance, complained to Defendant about its wage-payment violations, as described above, Defendant pointed to the absence of recorded and reported hours on heavy machinery to refuse to pay Plaintiffs what it owed them.

149.    Plaintiffs' and the Class Members' receipt of their proper wages was delayed, at least in part, because of Defendant's failure to properly record and report their hours and rates of pay on their paystubs.

150.    Plaintiffs and the Class Members were deprived of all of the information they were entitled to pursuant to the NYLL, namely the number of hours worked on the job outside of the Groundman title.  This deprivation hindered their ability to make fully informed decisions related to their employment with LGS and seek redress from the wage-payment violations described in this Complaint.

*LGS Violated the FLSA Willfully*

151.     Defendant's violations were willful or otherwise committed with reckless disregard to the FLSA's overtime requirements.

152.     Defendant was or should have been aware that Defendant failed to pay Crew Members at lawful overtime and prevailing wage rates.

153.     Defendant has operated as a commercial tree contractor for over 20 years.  During that time, Defendant has bid on and worked multiple multi-million-dollar Public Work Contracts, including those described above.  The relevant prevailing wage schedules are attached to each Public Work Contract.

154.     A reasonable employer of Defendant's experience and sophistication would know that employees are entitled to prevailing wages that correspond to the New York schedules.

155.     In fact, Defendant's bid packages submitted to public entities in search of Public Work Contracts contained specific rates for different machinery operators that corresponded to prevailing wage rates.

156.     Defendant's Public Work Contracts indicate that individuals operating equipment, chainsaws, climbing trees, operating the bucket, and driving trucks all pay at a higher rate than basic laborers and traffic control personnel.[18]

157.     Defendant did in fact pay Crew Members for some of their time at proper Operating Engineer prevailing wage rates.  However, despite tracking all hours worked, Defendant chose to only pay one hour at the correct rate.

---

[18]     *See* Debris Mgmt. Agr. (NYSCEF Doc. No. 2) at 10, *Looks Great Services, Inc. v. Nat'l Grid Energy Servs.*, No. 601012/2014 (Sup. Ct. Mar. 6, 2014).

158.	Additionally, Defendant logged higher-paying Operating Engineer rates differently, always reflecting hourly increments, instead of rounding to the nearest hundredth.

159.	Defendant has been subject to investigations and litigation over the failure to pay proper wages over the years.

160.	For instance, in 2014, a group of employees sued Defendant for failing to pay overtime wages as required by the FLSA, a matter styled as *Ayala, et al. v. Looks Great Servs., Inc., et al.*, No. 14 Civ. 6035 (E.D.N.Y.).

161.	As a result, an employer of Defendant's size, sophistication, and experience, should have known that it cannot arbitrarily pick and choose its employees' regular rate for determining their overtime pay.

## FIRST CAUSE OF ACTION
### FLSA – Overtime Wages
### (Brought on behalf of Plaintiffs and the FLSA Collective)

162.	Plaintiffs incorporate by reference all preceding allegations.

163.	Plaintiffs and members of the FLSA Collective are non-exempt employees entitled to be paid overtime compensation for all overtime hours worked.

164.	Defendant employed Plaintiffs and members of the FLSA Collective for workweeks longer than 40 hours and willfully failed to compensate them at a rate of at least one and one-half times the regular rate for all hours over 40, in violation of the requirements of Section 7 of the FLSA, 29 U.S.C. § 207(a)(1).

165.	Plaintiffs have expressed their consent to make these claims against Defendant by filing written consent forms, pursuant to 29 U.S.C. § 216(b).  *See* Ex. A.

166.	Defendant failed to make a good faith effort to comply with the FLSA with respect to compensating Plaintiffs and the FLSA Collective.

167. Because Defendant's violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

168. As a consequence of the willful underpayment of wages, alleged above, Plaintiffs and members of the FLSA Collective incurred damages and Defendant is indebted to them in the amount of the unpaid overtime compensation, together with interest, liquidated damages, attorneys' fees, and costs, in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### NYLL – Unpaid Overtime
### (Brought on behalf of Plaintiffs and the Class)

169. Plaintiffs incorporate by reference all preceding allegations.

170. Defendant employed Plaintiffs and members of the Class for workweeks longer than 40 hours and willfully failed to compensate them at a rate of at least one and one-half times their regular rate for all hours over 40, in violation of the requirements of Section 7 of the NYLL.

171. By the course of conduct set forth above, Defendant violated NYLL § 650, *et seq.*; 12 N.Y.C.R.R. Part 142-2.2.

172. Defendant had a policy and practice of refusing to pay overtime compensation at the proper rate to Plaintiffs and the Class.

173. Defendant's failure to pay overtimes wages at the proper rate to Plaintiffs and the Class was not premised on a reasonable, good-faith belief, as contemplated by NYLL § 663, that its applicable wage-payment practices complied with the NYLL.

174. As a consequence of the underpayment of wages, alleged above, Plaintiffs and members of the Class incurred damages and Defendant is indebted to them in the amount of the unpaid overtime compensation and such other legal and equitable relief due to Defendant's unlawful and willful conduct as the Court deems just and proper.

175.     Plaintiffs, on behalf of themselves and the Class, seek recovery of liquidated damages, attorneys' fees, and costs to be paid by Defendant, as provided by the NYLL.

### THIRD CAUSE OF ACTION
**NYLL – Unpaid Non-Overtime Wages**
**(Brought on behalf of Plaintiffs and the Class)**

176.     Plaintiffs incorporate by reference all preceding allegations.

177.     Defendant failed to compensate Plaintiffs and members of the Class on Public Work Contracts in accordance with prevailing wage schedules.

178.     By the course of conduct set forth above, Defendant violated NYLL §§ 190, 220, *et seq.*, the corresponding prevailing wage schedules, and supporting New York State Department of Labor Regulations.

179.     Defendant had a policy and practice of refusing to pay prevailing wages at the proper rate to Plaintiffs and the Class.

180.     Defendant's failure to pay prevailing wages at the proper rate to Plaintiffs and the Class was not premised on a reasonable, good-faith belief, as contemplated by Sections 198 and 663 of the NYLL, that its applicable wage-payment practices complied with the NYLL.

181.     As a consequence of the underpayment of wages alleged above, Plaintiffs and members of the Class incurred damages and Defendant is indebted to them in the amount of the unpaid prevailing wage compensation and such other legal and equitable relief due to Defendant's unlawful and willful conduct as the Court deems just and proper.

182.     Plaintiffs, on behalf of themselves and the Class, seek recovery of liquidated damages, attorneys' fees, and costs to be paid by Defendants as provided by the NYLL.

### FOURTH CAUSE OF ACTION
**Breach of the Public Works Contracts**
**(Brought on behalf of Plaintiff and the Class)**

183.     Plaintiffs incorporate by reference all preceding allegations.

184. Upon information and belief, the Public Work Contracts entered into by Defendant set forth the prevailing wage rates and supplemental benefits to be paid to Plaintiffs and the other members of the Class.

185. Those prevailing wage rates and supplemental benefits were made a part of the Public Work Contracts for the benefit of Plaintiffs and the other members of the Class.

186. Defendant breached the Public Work Contracts by willfully failing to pay Plaintiffs and the other members of the Class the prevailing wage rates and supplemental benefits stated in the contracts.

187. By reason of their breach of the Public Work Contracts, Defendant is liable to Plaintiffs and the other members of the Class for an amount of unpaid wages to be determined at trial, plus interest.

**FIFTH CAUSE OF ACTION**
**New York Labor Law – Failure to Provide Accurate Wage Statements**
**(Brought on behalf of Plaintiffs and the Class)**

188. Plaintiffs incorporate by reference all preceding allegations.

189. Defendant failed to supply Plaintiffs and the Class with accurate statements of wages as required by the NYLL § 195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

190. Due to Defendant's willful violations of NYLL § 195(3), Plaintiffs and the Class are entitled to statutory penalties for each workday that Defendant failed to provide them with

accurate wage statements reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by the NYLL, Article 6, § 198(1-d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, seek the following relief:

A. That, at the earliest possible time, Plaintiffs be allowed to give notice to the FLSA Collective, or that the Court issue such notice. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B. Unpaid overtime wages and liquidated damages pursuant to the FLSA and NYLL;

C. Unpaid non-overtime wages and liquidated damages pursuant to the NYLL;

D. Unpaid wages under the appropriate prevailing wage rates;

E. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

F. Designation of Plaintiffs Frazier and Alvarez as representatives of the Class, and counsel of record as Class Counsel;

G. Pre-judgment interest and post-judgment interest as provided by law;

H. Appropriate equitable and injunctive relief to remedy violations;

I. Attorneys' fees and costs of the action;

J. Issuance of a declaratory judgment that the practices complained of in this action are unlawful under the NYLL;

K. Reasonable incentive awards for Plaintiffs to compensate them for the time spent attempting to recover wages for the Class and for the risks they took in doing so; and

L.      Such other relief as this Court shall deem just and proper.

Dated: Melville, New York
           October 21, 2024

Respectfully submitted,

By: /s/ *Troy L. Kessler*
      Troy L. Kessler

**KESSLER MATURA PC**
Troy L. Kessler
Garrett Kaske
Benjamin A. Goldstein
534 Broadhollow Road, Suite 275
Melville, NY 11747
Telephone: (631) 499-9100
tkessler@kesslermatura.com
gkaske@kesslermatura.com
bgoldstein@kesslermatura.com

*Attorneys for Plaintiffs and the*
*Putative FLSA Collective and Class*

# **Exhibit A**

## CONSENT TO BECOME A PARTY-PLAINTIFF

1. I consent to be a party plaintiff in a lawsuit against my employer, Looks Great Services, Inc. and any related entities, for alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and any applicable state law.

2. During the past three years, there were occasions when Looks Great Services, Inc. unlawfully withheld overtime wages in violation of the Fair Labor Standards Act.

3. I designate Kessler Matura P.C. to represent me and make decisions on my behalf concerning the litigation, including any settlement. I agree to be bound by any adjudication, whether it is favorable or unfavorable.

4. I also consent to join any separate or subsequent action to assert my claims against Looks Great Services, Inc. and any other related entities potentially liable.

Date: _10/21/2024_____

Signed by:

_____
Signature

Kelvin Frazier

_____
Print Name

Docusign Envelope ID: 74C4282A-CB12-4B28-B8CD-4E367FD41A1E

## CONSENT TO BECOME A PARTY-PLAINTIFF

1. I consent to be a party plaintiff in a lawsuit against my employer, Looks Great Services, Inc. and any related entities, for alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and any applicable state law.

2. During the past three years, there were occasions when Looks Great Services, Inc. unlawfully withheld overtime wages in violation of the Fair Labor Standards Act.

3. I designate Kessler Matura P.C. to represent me and make decisions on my behalf concerning the litigation, including any settlement. I agree to be bound by any adjudication, whether it is favorable or unfavorable.

4. I also consent to join any separate or subsequent action to assert my claims against Looks Great Services, Inc. and any other related entities potentially liable.

Date: 10/21/2024 _____

_____
Signature

Ariel Alvarez

_____
Print Name

Docusign Envelope ID: 53F9BBE5-44DE-4103-8D6A-9656B4FB688D

## CONSENT TO BECOME A PARTY-PLAINTIFF

1. I consent to be a party plaintiff in a lawsuit against my employer, Looks Great Services, Inc. and any related entities, for alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and any applicable state law.

2. During the past three years, there were occasions when Looks Great Services, Inc. unlawfully withheld overtime wages in violation of the Fair Labor Standards Act.

3. I designate Kessler Matura P.C. to represent me and make decisions on my behalf concerning the litigation, including any settlement. I agree to be bound by any adjudication, whether it is favorable or unfavorable.

4. I also consent to join any separate or subsequent action to assert my claims against Looks Great Services, Inc. and any other related entities potentially liable.

Date: 10/21/2024 _____

Signed by:

FDCA690254C04F8...

Signature

Kenneth Hoyte

Print Name